UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAWN SAMANIEGO, et al.,

        Plaintiffs,

   v.

COUNTY OF CONTRA COSTA, et al.,

        Defendants.

Case No. 23-cv-02594-JST

**ORDER DENYING PLAINTIFFS'
MOTION FOR TEMPORARY
RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

Re: ECF No. 2

Before the Court is Plaintiffs Dawn Samaniego, Alvin Jackson, Norma Welch, Michael Welch, Tammy Griffin, Manuel Joaquin, Kimberly Perez, Michael Brown, Tia Darling, David Bills, Joanne Enea, Harry Sloat, III, Frank Warren, Steve March, Francisco Velez, Mary Ann Bakker, Carrie Campbell, Nova Coe, Johny Diaz, Mark McConnell, Geoff Delnegro, Paula Hanson, and Melissa Herrera's motion for a temporary restraining order and a preliminary injunction.  ECF No. 2.  The Court will deny the motion.

I.      **BACKGROUND**

This action arises from a multi-year dispute regarding real property commonly known as 1970 Taylor Road, Bethel Island, Contra Costa County (the "Property").  The Property is owned by BI Properties, Inc., a corporation owned by Alan Wagner and Kevin Davidson.  Plaintiffs currently reside in trailers, recreational vehicles, and boats on the Property.

The Property "is located in a retail-business (R-B) zoning district," which "does not allow for the habitation of recreational vehicles or trailers except within a lawful recreational vehicle park or campground authorized by a valid land use permit."  ECF No. 39 ¶ 8.  On January 6, 1992, Contra Costa County (the "County") approved such a land use permit, but it was revoked on August 15, 2005.  The County never issued another land use permit for the Property.

United States District Court
Northern District of California

Since 2005, code enforcement officers from the County's Building Inspection Division have investigated the Property and identified violations of the County Ordinance Code, including the presence of trailers, recreational vehicles, and boats being used for residential purposes on the Property. One code enforcement officer observed that the trailers, recreational vehicles, and boats on the Property were in "an unsafe and unsanitary condition." *Id.* ¶ 11. Specifically, the trailers, recreational vehicles, and boats "suffer from inadequate sanitation, lack of running water, lack of adequate heating, lack of electrical lighting, lack of connection to a sewage disposal system, lack of garbage removal services, nonconforming electrical wiring, lack of domestic water supply services, and faulty weather protection." *Id.*

On June 16, 2021, the County declared the Property a public nuisance, and served the Property owner with a notice and order to abate the nuisance. ECF No. 39 ¶ 26. On June 24, 2021, a representative of the property owner filed an appeal of the notice and order to abate. *Id.* The notice and order to abate became a final order on October 16, 2021 after the Property owner withdrew the appeal of the order. *Id.* ¶ 27. The abatement, however, never occurred. *Id.*

In April 2023, the County Abatement Officer again declared the conditions on the property to be a public nuisance and served the property owner with a notice and order to abate the nuisance. ECF No. 39 ¶ 30. Two individuals living on the Property appealed the notice and order to abate, and the County's Board of Supervisors (the "Board") held a hearing on the appeal on May 9, 2023. *Id.* ¶¶ 31–32. Following the hearing, the Board affirmed the County Abatement Officer's determination. *Id.* ¶ 32. On May 19, 2023, the County executed a contract with a private vendor "to abate and remove all trailers, recreational vehicles, and boats; the unpermitted electrical system"; and what the County describes as "'the junkyard conditions,' including all tires, batteries, car parts, construction equipment, junk, garbage, and debris, on the subject property." *Id.* ¶ 33.

On May 20, 2023, Plaintiffs sent a demand letter to the County and the Property's owner, seeking relocation benefits pursuant to California Health and Safety Code § 17975 and arguing that the County lacked the authority to abate the property. ECF Nos. 2 at 12, 2-1 at 33–37. Two days later, the County posted a notice of scheduled abatement at the Property, stating that the

1   abatement of the Property would begin on June 20, 2023 and that "any items left on the property

2   may be subject to abatement."  ECF No. 2-1 at 39.

3        On May 25, 2023, Plaintiffs filed this action seeking injunctive and monetary relief against

4   the County, Diana Burgis, Jason Crapo, Joseph Losado, Conrad Fromme, and Contra Costa

5   Sherriff's Department (collectively "County Defendants"), as well as David Livingston, Alan

6   Wagner, Kevin Davidson, Anchor Marina LLC, and BI Properties, Inc (collectively "Property

7   Owner Defendants").  ECF No. 1.  On June 23, 2023, Plaintiffs filed an amended complaint

8   adding Plaintiffs Frank Warren, Steve March, Francisco Velez, Mary Ann Bakker, Carrie

9   Campbell, Nova Coe, Johny Diaz, Mark McConnell, Geoff Delnegro, Paula Hanson, and Melissa

10  Herrera.  ECF No. 47.  The amended complaint explains that its allegations are "identical" to those

11  in the initial complaint, "except for the added plaintiffs . . . so the court will have jurisdiction

12  [over] the added plaintiffs at the time of the preliminary injunction hearing to protect their safety

13  and civil rights."  *Id.* at 1.  Plaintiffs bring the following causes of action: (1) conspiracy to

14  interfere with civil rights pursuant to 42 U.S.C. § 1985; (2) violations of Fourth, Fifth, and

15  Fourteenth Amendments pursuant to 42 U.S.C. § 1983; (3) negligence; (4) writ of mandate

16  pursuant to Cal. Civil Code § 1085; and (5) a taxpayer action pursuant to Cal. Civil Code § 526(a).

17  ECF No. 47 at 13–32.

18        Plaintiffs filed a motion for a temporary restraining order and a preliminary injunction.

19  ECF No. 2.  County Defendants filed an opposition to the motion, ECF No. 38, but Property

20  Owner Defendants have not opposed.  Plaintiffs filed a reply.[1]  ECF No. 48.

21

---

22  [1] Plaintiffs filed declarations with attachments in support of their reply brief.  ECF Nos. 49–63.
    County Defendants object to these declarations.  ECF No. 64.  County Defendants request that the
23  Court strike the declarations, or in the alternative, consider supplemental declarations from Conrad
    Fromme and Jenny Robbins.  *Id.* at 2.

24  Ordinarily, the Court will not consider arguments and evidence raised for the first time on reply.
25  *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 912 n.8 (N.D. Cal. 2021).  However, the Court
    may exercise its discretion to consider such materials where the opposing party will suffer no
26  prejudice as a result.  *Koerner v. Grigas*, 328 F.3d 1039, 1048–49 (9th Cir. 2003) (citing *United
    States v. Ullah,* 976 F.2d 509, 514 (9th Cir.1992).  Here, the supplemental declarations submitted
27  by the Plaintiffs primarily address the equities.  Because the Court bases its ruling on the
    Plaintiffs' failure to demonstrate success on the merits of their legal claims, as set forth below, its
28  consideration of these supplemental declarations does not prejudice the County Defendants.  The
    Court therefore overrules the County's objections and denies its request to consider the Fromme

United States District Court
Northern District of California

## II.     LEGAL STANDARD

The Court applies a familiar four-factor test on both a motion for a temporary restraining order and a motion for a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff seeking either remedy "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

To grant preliminary injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor."  *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam).  Assuming that this threshold has been met, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

## III.     DISCUSSION

Plaintiffs seek to enjoin the abatement of the Property, at least until they have been provided with relocation assistance pursuant to California Health and Safety Code Section 17975. In opposition, County Defendants argue that the Court should deny Plaintiffs' request for injunctive relief because the action is barred by Plaintiffs' failure to exhaust judicial remedies and by the *Younger* doctrine.  The Court first analyzes whether Plaintiffs were required to exhaust judicial remedies.

County Defendants argue that "to challenge the Board's abatement order, including its constitutionality, Plaintiffs are first required to seek relief under § 1094.5" of the California Code

and Robbins declarations.

4

of Civil Procedure.  ECF No. 38 at 12.  Plaintiffs counter that they were not required to file a writ petition pursuant to Section 1094.5 for three reasons: (1) they "are not appealing the abatement itself," rather they are "challenging the unconstitutional way the abatement is being conducted and the undisputed civil conspiracy between" the County and Property Owner Defendants; (2) the abatement is directed at the Property Owner Defendants, not Plaintiffs; and (3) "if Plaintiffs did seek a writ under . . . § 1094.5, there is no evidence that it would protect their homes pending the appeal."  ECF No. 48 at 5.

"Under federal common law, federal courts accord preclusive effect to state administrative proceedings that meet the fairness requirements of *United States v. Utah Construction & Mining Co*[.]"  *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1154 (9th Cir. 2018).  The *Utah Construction* requirements are: "(1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate."  *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1033 (9th Cir. 1994), *as amended* (Dec. 27, 1994).

"Because California has adopted the *Utah Construction* standard, [federal courts] give preclusive effect to a state administrative decision if the California courts would do so."  *Doe*, 891 F.3d at 1155.  "In California, '[e]xhaustion of judicial remedies . . . is necessary to avoid giving binding 'effect to [an] administrative agency's decision[.]'"  *Id.* (alterations in original) (quoting *Johnson v. City of Loma Linda*, 24 Cal.4th 61, 70 (2000)).  To exhaust judicial remedies, a party must "fil[e] a § 1094.5 petition, the exclusive and 'established process for judicial review' of an agency decision."  *Id.* (quoting *Johnson*, 24 Cal. 4th at 70); *see also Y.K.A. Indus., Inc. v. Redevelopment Agency of City of San Jose*, 174 Cal. App. 4th 339, 355 (2009) ("The doctrine of exhaustion of judicial remedies . . . is a form of res judicata, of giving collateral estoppel effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive *judicial* remedy for reviewing administrative action." (emphasis in original) (quotation marks and citations omitted)).

Here, notwithstanding Plaintiffs' assertion to the contrary, Plaintiffs are challenging the Board's abatement order.  The Board's decision to deny the appeal and order allowing the

5

United States District Court
Northern District of California

abatement to proceed is at the center of Plaintiffs' claims for conspiracy to deprive civil rights (first cause of action), violation of the Fifth Amendment (second cause of action), violation of the Fourteenth Amendment (third cause of action), violation of the Fourth Amendment (fourth cause of action), and a taxpayer action (seventh cause of action).  *E.g.*, ECF No. 47 ¶ 32 (alleging that "Supervisor Burgis . . . moved to complete the abatement exactly as proposed by Jason Crapo, Joe Losado, and Conrad Fromme – which was then approved by the Contra Costa Board of Supervisors" in support of the conspiracy to deprive civil rights); *id.* ¶ 38 ("The approval [of the abatement] by County of Contra Costa Board of Supervisors was a final decision by Contra Costa County to take Plaintiffs private property without just compensation in violation of the Takings Clause of the Fifth Amendment."); *id.* ¶ 46 ("The approval [of the abatement] by County of Contra Costa Board of Supervisors was a final decision by Contra Costa County to take Plaintiffs private property without just compensation in violation of the substantive due process provisions of the Fourteenth Amendment."); *id.* ¶ 59 ("The approval [of the abatement] by County of Contra Costa Board of Supervisors was a final decision by Contra Costa County to seize Plaintiffs private property in an unreasonable manner" in violation of the Fourth Amendment); *id.* ¶ 70 (alleging that "the abatement will put Plaintiffs lives in jeopardy and other civil rights – the expenditures for the abatement will be a wasteful and illegal expenditure of Plaintiffs tax dollars" in support of the taxpayer action pursuant to California Code of Civil Procedure Section 526a).  Additionally, the Court would have to review the Board's appeal process and order to assess whether the way in which the abatement will be conducted is unconstitutional.

The Court also concludes that the Board's abatement proceedings meet *Utah Construction*'s fairness requirements.  First, the Board was acting in a judicial capacity when it held the appeal hearing.  Second, the Board resolved disputed questions of fact and law when it considered whether to affirm the County abatement officer's determination that the Property constitutes a public nuisance.  Third, the tenants who appealed the abatement notice were represented by counsel and were permitted to present evidence and deliver oral argument in support of the appeal.  *See* ECF No. 39-14; *see also* Contra Costa Cnty. Ordinance Code § 14-6.418(a) ("At the hearing before the board, the appellant will be given the opportunity to present

oral and written testimony and other evidence, and to present oral and written argument.").

Finally, at least one California court has held that a Section 1094.5 writ petition is an appropriate

mechanism to challenge an order from the Contra Costa County Board of Supervisors affirming a

notice and order to abate.  *Golden Gate Water Ski Club v. County of Contra Costa*, 165 Cal. App.

4th 249, 254–55, 269 (2008) (affirming the denial of a petition for an administrative writ of

mandate under Section 1094.5).  Therefore, the Board's abatement proceedings satisfy the *Utah*

*Construction* fairness requirements, and Plaintiffs must file a Section 1094.5 writ petition before

filing their first, second, third, fourth, and seventh causes of action.[2]  Because it is undisputed that

Plaintiffs have not filed a Section 1094.5 writ petition, the Court is barred from hearing those

claims.[3]

As the Court is barred from hearing the first, second, third, fourth, and seventh causes of

action, Plaintiffs have failed to establish a likelihood of success on or serious questions going to

the merits of those claims.  Plaintiffs' remaining claim is a request for writ of mandate pursuant to

Section 1085 of the California Code of Civil Procedure.[4]  The Court finds that Plaintiffs have

failed to show either a likelihood of success or serious questions going to showing on the merits

on that claim also.

As an initial matter, the Court finds that the exercise of supplemental jurisdiction over that

claim is not appropriate, given the Court's lack of jurisdiction over Plaintiffs' federal claims.

"Having dismissed Plaintiffs' federal claims, the Court's 'decision of whether to exercise

supplemental jurisdiction over the remaining state law claims is purely discretionary.'" *Metroflex*

*Oceanside LLC v. Newsom*, 532 F. Supp. 3d 976, 984 (S.D. Cal. 2021) (quoting *Couture v. Wells*

*Fargo Bank, N.A.*, No. 11-CV-1096-IEG (CAB), 2011 WL 3489955, at *4 (S.D. Cal. Aug. 9,

---

[2] The parties have not briefed the question of whether a Section 1094.5 writ petition must be filed in state court.  Therefore, the Court does not address whether it could or would exercise supplemental jurisdiction over that state claim.

[3] Because the Court concludes that Plaintiffs have failed to exhaust judicial remedies, it does not address whether the *Younger* doctrines applies.

[4] Plaintiffs also bring a claim for negligence, but do not assert that claim against the County Defendants.  *See* ECF No. 1 at 24.

United States District Court
Northern District of California

1    2011) (internal quotation omitted)).  "Here, because the Court is dismissing the only federal

2    claims at the outset of the litigation, it is more appropriate to decline supplemental jurisdiction

3    over the state law claims." *Id.*; *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)

4    (when "all federal-law claims are eliminated before trial, the balance of factors to be considered

5    under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—

6    will [usually] point toward declining to exercise jurisdiction over the remaining state-law claims");

7    *Ornelas v. DP Invs.*, 816 F. App'x 185, 186 (9th Cir. 2020) ("Having dismissed Plaintiffs' sole

8    federal-law claim at an early stage of the litigation, the district court properly declined to exercise

9    supplemental jurisdiction over Plaintiffs' state-law claims against . . . Defendants.").

10          Secondly, Plaintiffs have not demonstrated a likelihood of success on the merits on their

11   writ claim under California Code of Civil Procedure Section 1085.  That claim seeks to compel the

12   payment of relocation benefits under California Health and Safety Code Section 17975, which

13   provides as follows:

> Any tenant who is displaced or subject to displacement from a
> residential rental unit as a result of an order to vacate or an order
> requiring the vacation of a residential unit by a local enforcement
> agency as a result of a violation so extensive and of such a nature
> that the immediate health and safety of the residents is endangered,
> shall be entitled to receive relocation benefits from the owner as
> specified in this article. The local enforcement agency shall
> determine the eligibility of tenants for benefits pursuant to this
> article.

19   Cal. Health & Safety Code § 17975.  By its terms, Section 17975 makes relocation benefits

20   available only to persons being displaced from "residential rental units."  *Id.*  The property on

21   which Plaintiffs are currently living, however, is not zoned for human habitation and Plaintiffs

22   have not attempted to show how the property consists of "residential rental units."  ECF No. 39

23   ¶¶ 8–9; *see* Cal. Civ. Code § 1954.51 (defining "residential real property" as "any dwelling or unit

24   that is intended for human habitation").  Thus, Plaintiffs have failed to establish entitlement to

25   such benefits.

26          An additional problem is that Plaintiffs have not pleaded facts that would entitle them to a

27   writ to compel the performance of a discretionary act by the County Defendants.  They seek a writ

28   compelling the County Defendants to pay relocation benefits to them if their landlord will not do

United States District Court
Northern District of California

so.  The California Health & Safety Code does provide that "the local enforcement agency *may* advance relocation payments" "[i]f the owner or designated agent fails, neglects, or refuses to pay" them.  Cal. Health & Safety Code § 17975.5(a) (emphasis added).  Whether to advance such benefits, however, is solely within the agency's discretion, and "[n]othing in this article shall be construed to require the local enforcement agency to pay any relocation benefits to any tenant, or assume any obligation, requirement, or duty of the owner pursuant to this article."  *Id.* § 17975.5(d).

"Normally, mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a particular manner."  *County of Los Angeles v. City of Los Angeles*, 214 Cal. App. 4th 643, 654 (2013).  "Ordinary mandate under Code of Civil Procedure section 1085 is used to review ministerial acts, quasi-legislative acts, and quasi-judicial decisions which do not meet the requirements for review under Code of Civil Procedure section 1094.5."  *Tracy Rural Cnty. Fire Prot. Dist. v. Loc. Agency Formation Com. of San Joaquin Cnty.*, 84 Cal. App. 5th 91, 106 (2022) (citations omitted).  "[T]he appropriate standard is whether the agency's action was arbitrary, capricious, entirely lacking in evidentiary support, or failed to follow the procedure required by law." .  *Id.* (citations omitted).  "To compel an official or agency to exercise discretionary power the petitioner must show the official or agency 'failed to act, and its failure to act is arbitrary, beyond the bounds of reason, or in derogation of the applicable legal standards.'"  *Ass'n of Deputy Dist. Att'ys for L.A. Cnty. v. Gascon*, 79 Cal. App. 5th 503, 529 (2022) (quoting *AIDS Healthcare Found. v. L.A. Cnty. Dep't of Pub. Health*, 197 Cal. App. 4th 693, 704 (2011)).  Here, Plaintiffs' complaint does not allege an abuse of discretion.  Therefore, Plaintiffs have failed to establish a likelihood of success on or serious questions going to the merits of this remaining claim.

The Court acknowledges that many of the Plaintiffs make a strong showing on the equities.  Some of them have occupied the Property for a long time, *e.g.*, ECF No. 52 ¶ 1 (ten years), cannot find a suitable alternative place to live, *e.g.*, ECF No. 58 ¶ 5–7, and/or do not have enough money to pay for a suitable alternative, *e.g.*, ECF No. 56 ¶ 12.  At least one of the Plaintiffs is a veteran of the armed services.  ECF No. 52 ¶ 6.  The Court is sympathetic to these circumstances.  Without a

1   likelihood of success on the merits, however, or at a minimum, serious questions going to the

2   merits, the Court does not reach the other factors in the test for preliminary injunctive relief.

3   *Disney Enterps., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) ("Likelihood of success

4   on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry,

5   the court need not consider the other factors, in the absence of serious questions going to the

6   merits[.]" (quotation marks and citations omitted)).

7        Accordingly, the Court concludes that Plaintiffs have failed to satisfy the four-factor test

8   for preliminary injunctive relief and denies Plaintiffs' motion for a temporary restraining order and

9   preliminary injunction.[5]

**CONCLUSION**

11       For the foregoing reasons, the Court denies Plaintiffs' motion for a temporary restraining

12   order and a preliminary injunction.

13       **IT IS SO ORDERED.**

14   Dated:  June 29, 2023

JON S. TIGAR
United States District Judge

_____

[5] This order expresses no opinion regarding the merits of Plaintiffs' claims against the Property
Owner Defendants.